AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED

OCT 1 1 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>One Black Samsung Cellphone; One Alcatel Cellphone;<br>One Cool Pad Cellphone; One ZTE Cellphone; and One<br>iPhone Cellphone | )<br>)<br>)<br>)   Case No.   **19MJ4483**<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A
(INCORPORATED HEREIN)

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B
(INCORPORATED HEREIN)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 USC §§ 952, 960, 963 | Importation of Controlled Substances |

The application is based on these facts:

SEE AFFIDAVIT OF SPECIAL AGENT KYLE HAUSMANN

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kyle Hausmann, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _16|11|19_

_____
*Judge's signature*

City and state:  San Diego, CA

Hon. Linda Lopez, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

**Target Device 1:**     One Black Samsung Cellphone
FP&F: 2019250400242501



**Target Device 2:**     One Alcatel Cellphone
FP&F: 2019250400242501



**Target Device 3:**          One Cool Pad Cellphone
                              FP&F: 2019250400242501



**Target Device 4:**          One ZTE Cellphone
                              FP&F: 2019250400242501



**Target Device 5:**          iPhone Cellphone
                              IMEI: 355358086595413
                              FP&F: 2019250400242501



**Target Devices 1** through **4** are currently in the possession of Customs and Border

Protection Vault, located at 9495 Customhouse Plaza, San Diego, California 92154.

**Target Device 5** is currently in the possession of Homeland Security Investigations, Deputy Special Agent in Charge San Ysidro, located at 2255 Niels Bohr Court, Can Diego California 92154.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of March 19, 2019, up to and including September 19, 2019:

a. tending to indicate efforts to import methamphetamine and fentanyl, or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine and fentanyl, or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine and fentanyl, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine and fentanyl, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

# **AFFIDAVIT**

I, Special Agent Kyle Hausmann, being duly sworn, hereby state as follows:

## **INTRODUCTION**

1.     I submit this affidavit in support of an application for a warrant to search the following electronic devices:

One Black Samsung Cellphone
FP&F: 2019250400242501
(**Target Device 1**)

One Alcatel Cellphone
FP&F: 2019250400242501
(**Target Device 2**)

One Cool Pad Cellphone
FP&F: 2019250400242501
(**Target Device 3**)

One ZTE Cellphone
FP&F: 2019250400242501
(**Target Device 4**)

iPhone Cellphone
IMEI:355358086595413
FP&F: 2019250400242501
(**Target Device 5**)

(collectively the **Target Devices**) as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963, as further described in Attachment B.

2.     The requested warrant relates to the investigation and prosecution of Esther Silva, Brandon Cervantes, and Crystal Lara (SILVA, CERVANTES, and LARA respectively) for importing approximately 23.4 kilograms of methamphetamine and 1 kilogram of fentanyl from Mexico into the United States. *See U.S. v. Silva, et al.*, Case No. 19-mj-4068 (S.D. Cal.) at ECF No. 1 (Complaint). **Target Devices 1** through **4** are currently in the possession of Customs and Border Protection Vault, located at 9495 Customhouse Plaza, San Diego, California 92154. **Target Device 5** is currently in the

1

1  possession of Homeland Security Investigations, Deputy Special Agent in Charge San
2  Ysidro, located at 2255 Niels Bohr Court, Can Diego California 92154.

3       3.      The information contained in this affidavit is based upon my training,
4  experience, investigation, and consultation with other members of law enforcement.
5  Because this affidavit is made for the limited purpose of obtaining a search warrant for the
6  **Target Devices**, it does not contain all the information known by me or other agents
7  regarding this investigation.  All dates and times described are approximate.

8                                    **BACKGROUND**

9       4.      I have been employed as a Special Agent with Homeland Security
10 Investigations (HSI) since August 2016. Prior to becoming an HSI Special Agent, I was a
11 United States Border Patrol Agent for approximately 7 years. I am currently assigned to
12 the Contraband Smuggling Group at Otay Mesa, San Diego, California. I have received
13 training from the Federal Law Enforcement Training Center and have attended the U.S.
14 Border Patrol Academy, and other law enforcement investigative courses.

15      5.      During my tenure with HSI, I have participated in the investigation of various
16 drug trafficking organizations involved in the importation and distribution of controlled
17 substances into and through the Southern District of California.

18      6.      Through my training, experience, and conversations with other members of
19 law enforcement, I have gained a working knowledge of the operational habits of narcotics
20 traffickers, in particular those who attempt to import narcotics into the United States from
21 Mexico at Ports of Entry. I am aware that it is common practice for narcotics smugglers to
22 work in concert with other individuals and to do so by utilizing cellular telephones. Because
23 they are mobile, the use of cellular telephones permits narcotics traffickers to easily carry
24 out various tasks related to their trafficking activities, including, *e.g.*, remotely monitoring
25 the progress of their contraband while it is in transit, providing instructions to drug couriers,
26 warning accomplices about law enforcement activity, and communicating with co-
27 conspirators who are transporting narcotics and/or proceeds from narcotics sales.

28

7.     Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.  In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

8.     This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a.     tending to indicate efforts to import methamphetamine and fentanyl, or some other federally controlled substance, from Mexico into the United States;

b.     tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine and fentanyl, or some other federally controlled substance, from Mexico into the United States;

c.     tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine and fentanyl, or some other federally controlled substance, from Mexico into the United States;

d.     tending to identify travel to or presence at locations involved in the importation of methamphetamine and fentanyl, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

9.   On September 19, 2019, at approximately 1:06 am, SILVA, CERVANTES, and LARA applied for permission to enter the United States at the San Ysidro Port of Entry. SILVA was the driver of a 2002 red Nissan Altima (the "Vehicle") bearing California license plates 5BCD485. LARA, a United States Citizen was seated in the front passenger seat of the Vehicle. CERVANTES, a United States Citizen was seated in the back-passenger seat. Customs and Border Protection Officer ("CBPO") Abner Rios was conducting pre-primary roving patrol operations when he observed SILVA, LARA, and CERVANTES within the Vehicle. CBPO Rios asked all three passengers their country of citizenship. All three passengers answered United States. CBPO Rios asked SILVA where they were traveling. SILVA stated Pomona. CBPO Rios asked SILVA what the purpose of their trip to Mexico was. SILVA stated to gamble and have fun at a casino. CBPO Rios asked what the name of the casino was. All three passengers were unaware of the casino's name. CBPO Rios received two negative customs declarations and began inspecting the Vehicle. CBPO Rios discovered the driver's side quarter panel had an abnormally high density reading on his K910B Density Reader. CBPO Rios began inspecting the trunk of the Vehicle where he discovered several semi-round plastic wrapped packages. CBPO Rios detained SILVA, LARA, and CERVANTES. CBPO Rios discovered an additional semi round plastic wrapped package concealed under SILVA's seat. SILVA, LARA, CERVANTES, and the Vehicle were referred to secondary.

10.   CBPO Kirby McIntosh conducted a Z-Portal X-Ray scan of the Vehicle and detected anomalies in the quarter panels of the Vehicle.

11.   CBPO Jesus Torres conducted a seizure inspection of the Vehicle. The inspection resulted in the discovery of approximately 22 packages concealed throughout

the Vehicle, with a total approximate weight of 23.5 kg (51.80 lbs). A sample of the substance contained within the packages field tested positive for the characteristics of methamphetamine. Two (2) additional packages were discovered containing a pink powdery substance, with a total weight of approximately 1.0 kg (2.2 lbs). A sample of the substance contained within the packages field tested positive for the characteristics of fentanyl.

12.     SILVA, LARA, and CERVANTES were placed under arrest. Agents read each Defendant their *Miranda* rights.

13.     SILVA waived her rights and stated that she was picked up by CERVANTES on the day of her arrest, and that they traveled to Mexico to gamble at a casino. SILVA stated she invited her friend LARA to accompany her. SILVA stated the Vehicle belonged to CERVANTES and CERVANTES drove the vehicle into Mexico. SILVA stated when they were ready to return to the United States CERVANTES asked her to drive. SILVA stated she met CERVANTES the day prior to her arrest. SILVA denied any knowledge of the contraband discovered in the Vehicle.

14.     CERVANTES waived his rights and stated that SILVA's boyfriend, known as "Shorty," offered to let CERVANTES take SILVA and LARA to Mexico to have a good time. CERVANTES stated that SILVA and LARA picked him up at his parents' house prior to traveling to Mexico. CERVANTES denied any knowledge of the contraband discovered in the Vehicle.

15.     LARA waived her rights and stated that the night prior to her arrest she stayed in a trailer with SILVA and SILVA's boyfriend, Daniel or "Shorty." "Shorty" paid LARA $20 and asked her to go to Mexico with SILVA and SILVA's nephew CERVANTES. LARA stated that she, SILVA, and CERVANTES traveled to Mexico to gamble at a casino. At one-point CERVANTES asked LARA to drive back to the United States. LARA declined because she does not have a driver's license. LARA believed SILVA and CERVANTES invited her so that if they were caught and arrested, they could blame her because she is a heroin addict. LARA stated that SILVA instructed her to "stick to the

1  story." LARA stated that she did not know what the story, and that she was telling the truth.

2  16.  **Target Devices 1** through **4** were seized at the time of Defendants' arrests and

3  annotated on Fines Penalties and Forfeitures number 2019250400242501, line item 0004.

4  **Target Devices 1** through **4** are currently in the possession of Customs and Border

5  Protection Vault, located at 9495 Customhouse Plaza, San Diego, California 92154. **Target**

6  **Device 5** was seized at the time of Defendants' arrests under Fines Penalties and Forfeitures

7  number 2019250400242503 under "Personal Effects." **Target Deceive 5** was stored at the

8  San Ysidro Port of Entry located at 720 E San Ysidro Blvd, San Diego, CA 92173 from

9  the September 19, 2019 until October 9, 2019. On October 9, 2019, Special Agent Hope

10  and I removed **Target Device 5** from Fines Penalties and Forfeitures number

11  2019250400242503 "Personal Effects," and added it to 2019250400242501, line item

12  0004. **Target Device 5** is currently in the possession of Homeland Security Investigations,

13  Deputy Special Agent in Charge San Ysidro, located at 2255 Niels Bohr Court, Can Diego

14  California 92154.

15  17.  In light of the above facts, SILVA's, CERVANTES', and LARA's

16  statements, and my own experience and training, there is probable cause to believe that

17  SILVA, CERVANTES, and LARA were using the **Target Devices** to communicate with

18  others to further the importation of illicit narcotics into the United States. This conclusion

19  is supported by the fact that cellphones are commonly used to facilitate drug trafficking.

20  18.  In my training and experience, narcotics traffickers may be involved in the

21  planning and coordination of a drug smuggling event in the days and weeks prior to an

22  event. Co-conspirators are also often unaware of a defendant's arrest and will continue to

23  attempt to communicate with a defendant after their arrest to determine the whereabouts of

24  the narcotics. Based on my training and experience, it is also not unusual for individuals,

25  such as Defendants, to attempt to minimize the amount of time they were involved in their

26  smuggling activities, and for the individuals to be involved for weeks and months longer

27  than they claim. Accordingly, I request permission to search the **Target Devices** for data

28  beginning on March 19, 2019, up to and including September 19, 2019.

**METHODOLOGY**

19.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20.    Following the issuance of this warrant, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the **Target Devices** and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the

identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

22.    Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

23.    Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of SILVA's, CERVANTES', and LARA's violations of Title 21, United States Code, Sections 952, 960, and 963.

24.    Because the **Target Devices** were seized at the time of Defendants' arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from March 19, 2019, up to and including September 19, 2019.

25.    Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Kyle Hausmann
Homeland Security Investigations (HSI)

Subscribed and sworn to before me this ı1ᵗʰ day of October, 2019.

Hon. Linda Lopez
United States Magistrate Judge

8